ARTHUR REDDING, Plaintiff, Appellant, v. EMMA REDDING et al., Defendants, Appellees, MARION COUNTY STATE BANK of Pella, Defendant, Appellant.

No. 44557.

FEBRUARY 14, 1939.

PETITION FOR REHEARING WITHDRAWN JUNE 14, 1939.

Harold Clements and Johnson & Johnson, for appellant.

Johnston & Shinn and Vander Ploeg & Heer, for appellees.

OLIVER, J.—This is an action in equity to partition 70 acres of land in Marion county, and two properties in the town of Harvey, Iowa, of an estimated total value of about $3,050. This real estate was formerly owned by C. N. Redding who will be referred to herein as father Redding, and who died intestate in 1920, leaving a surviving spouse, Emma Redding, referred to herein as mother Redding, and leaving as his heirs at law three sons, F. W., Arthur and James. Son F. W. Redding died intestate in 1934, leaving as his sole heir at law his daughter, Vera Laurel Redding Blaine.

The partition suit was instituted July 13, 1937, by son Arthur against mother Redding, son James and granddaughter Vera. The petition alleged that plaintiff Arthur, defendant James and defendant Vera each owned an undivided 2/9 interest, that mother Redding owned an undivided 1/3 interest in the real estate, and that plaintiff's 2/9 and mother Redding's 1/3 were subject to a $2,500 mortgage of Marion County State Bank of Pella, Iowa. Attached to the petition was a copy of the $2,500 mortgage by Arthur and mother Redding to the bank, covering "our undivided 5/9 interest in" the real estate. It may be noted that the mortgage was acknowledged and filed for record only the day before Arthur's suit was started. Said bank was made a party defendant as were also the wives of the plaintiff Arthur and defendant James.

On October 5, 1937, James and Vera filed answer and cross-petition in which it was alleged that Arthur, James and Vera each owned an undivided one third of the real estate, and that all of their interests were subject to a life estate in mother Redding. This answer averred that after the death of father Redding a written agreement was made between mother Redding and her three sons by which mother Redding was given the income from all the real estate during her life, in lieu of her distributive share, and the three sons the ownership of all the real estate subject to the life estate of mother Redding. The foregoing allegations were made the basis for denying the averments of Arthur's petition with reference to the bank's mortgage and the shares covered by it. It was further alleged that the bank knew that mother Redding had only a life estate in the property, that mother Redding was 84 years of age, and that her signatures to the note and mortgage were without consideration, and procured by fraud and duress of the bank and its predecessor bank. The court was asked to deny the prayer of plaintiff's petition and to establish the life estate of mother Redding in all the real estate and an undivided one third in each of Arthur, James and Vera, subject to said life estate and for general equitable relief. By amendment it was prayed that if the court should find a one-third interest in mother Redding, an accounting of income be had for the period since father Redding's death, and that the lien of James and Vera upon the share of mother Redding for their share thereof be established superior to the mortgage of the bank.

The day following the filing of this answer and cross-petition, default was entered against mother Redding but no judgment was taken thereon.

Two days later son Arthur filed reply to the answer and cross-petition in which he denied that mother Redding had a life estate in the property or that she had the possession, control or income thereof.

A few days later the bank made reply to the answer of James and Vera denying the life estate agreement or any knowledge thereof, also alleging that its mortgage was the result of several renewals of mortgages given to its predecessor, First National Bank of Harvey, Iowa, and prayed that said mortgage be established against the 5/9 interest belonging to plaintiff Arthur and defendant mother Redding. The bank also answered

plaintiff's petition admitting the allegations thereof and later amended its reply to the answer and cross-petition of James and Vera as amended, by alleging that its mortgage covered the full share which Emma Redding had in the real estate, without the right of any deduction in favor of James and Vera for their share of rents and profits collected by mother Redding.

On March 2, 1938, mother Redding filed motion to set aside default alleging she was an aged person without knowledge of her legal rights, that no decree had been entered, that no rights would be infringed or lost by setting aside the default and that she had a meritorious defense. On the same day she filed answer and cross-petition alleging that the facts were as alleged by the answer and cross-petition of James and Vera as amended and adopting the same and the prayer thereof. On the same day Arthur filed motion to strike mother Redding's pleading. The court ordered the motions submitted with the main case and apparently sustained the motion to set aside the default and overruled the motion to strike.

Error is predicated upon these rulings on the theory that the court was without jurisdiction to pass upon the application to set aside default because it was not made at the term in which default was entered. However, judgment had not been entered upon the default and this court has held in a number of cases that in such state of the record the court may, in its discretion, set aside a default entered at a previous term. Weinhart v. Meyer, 215 Iowa 1317, 247 N. W. 811, and cases cited therein.

In the case at bar it will be noted that at the time of this default the bank had not answered but that there was on file the answer and cross-petition of James and Vera, which was subsequently adopted by mother Redding. The matters alleged in this pleading, if true, would effectually prevent partition and also invalidate the lien of the bank's mortgage against the life estate of mother Redding. Therefore, the court not only had jurisdiction to set aside the default, but also sound reason for so doing.

At the conclusion of the trial the court found that by reason of the fact that mother Redding owned a life estate therein Arthur was not entitled to partition the property, and that the mortgage held by the bank was not a lien against said life estate. From judgment and decree in accordance with such find-

ings son Arthur and the bank have appealed, and inasmuch as said appellants apparently cooperated both before and during the trial the same questions are involved in both appeals. It may be said here that appellants concede that partition would not lie in this case if mother Redding owned a life estate in the property. This phase of the dispute rests upon the decision of that fact question.

Prior to father Redding's death in 1920, he did his banking business with First National Bank of Harvey, Iowa, and this course of dealing was thereafter continued by mother Redding. Son Arthur also had his financial dealings with this bank. About 1935, the appellant, Marion County State Bank, took over the assets and business of First National Bank of Harvey, Iowa, and the business was continued under the management of a Mr. Bean, who had, for many years, acted as an officer in the management of the predecessor bank and apparently actively handled the various dealings with the Reddings. Therefore, the appellant bank may properly be said to have had knowledge of said matters.

On behalf of the appellees, James Redding and his wife, Daisy, testified that shortly after father Redding's death mother Redding and her three sons made a written agreement that mother Redding was to have the estate as long as she lived and to take all the income from it, and that after her death it was to be divided equally between the three sons; that this agreement was had at the courthouse and was there written in longhand by Mr. Shinn, attorney for the estate of father Redding, was signed by the parties thereto and left with Mr. Shinn. Mother Redding also testified to the same effect but from her cross-examination and testimony it appears that probably by reason of her advanced age her recollection and knowledge of this and other transactions had by her are uncertain.

The witnesses testified that the original contract was left with Mr. Shinn, and that no copies were made. Mr. Shinn testified that he had no recollection of having written the contract, that he had a fire in his office in 1922, and that he had searched through his remaining papers and was unable to find any such contract.

Son Arthur Redding testified that he did not remember signing such an instrument or of ever having been in the courthouse in regard to such an agreement. However, he did testify

that the sons had agreed to let mother Redding collect the rent, that he looked after the farm until 1926, and turned the proceeds over to her, and it appears from the testimony of this witness and other witnesses that since the death of father Redding, mother Redding received or was supposed to receive all of the income from all of the real estate in controversy.

The evidence further shows that in 1925, son Arthur and his wife made a mortgage to the bank to secure $3,000 in which he described his portion of the real estate as, "my undivided one-third interest as heir at law of C. N. Redding, deceased, * * * subject to the life estate therein of Emma Redding." In 1927, son Arthur and wife made a renewal mortgage in which he again pledged his one-third interest subject to the life estate of mother Redding.

In 1931, mother Redding had evidently been persuaded to sign as surety for Arthur and another renewal mortgage was secured by the bank in which she joined, and in which the real estate was described as "my undivided one-third interest", etc., but the words "subject to the life estate therein of Emma Redding" were eliminated. In September 1934, the mortgage was again renewed by Arthur, his wife and mother Redding, the real estate being described as, "all our right, title and interest in and to the following described real estate". In 1937, the mortgage was again renewed being signed by Arthur and wife and mother Redding and conveying, "our undivided five-ninths (5/9) interest in and to the following described real estate". This last mortgage is the one in question herein.

It may be here noted that Mr. Bean, the banker, testified that in 1933, appellee Arthur said in the presence of mother Redding that her interest was different than what was stated in the prior mortgages and that there never had been any agreement as far as the respective interests in the land were concerned. That they were letting her have the income. According to Mr. Bean, mother Redding then said she had her interest in the property and was willing to mortgage it if the bank would renew the indebtedness. This took place at a time when the bank was concerned about the loan and was pressing for additional security and the 1934 mortgage did cover all the right, title and interest of both Arthur and mother Redding. In 1937 the bank again became concerned about the loan and again secured a renewal mortgage from Arthur and mother Redding,

this time covering the undivided 5/9 of the property. Although it was dated in April, the mortgage was not acknowledged and recorded until July 12, and the very next day Arthur instituted this partition suit and attached a copy of the mortgage to his petition.

■ The documents hereinbefore mentioned, together with the manner in which the property was handled, furnish convincing corroboration to the testimony of the witnesses that mother Redding and her sons did make the written agreement which gave her a life estate in the real property in exchange for her one-third interest therein. Agreements of this character have been frequently made and are sustained by numerous decisions of this court and other jurisdictions. Henderson v. Henderson, 136 Iowa 564, 114 N. W. 178. The written agreement was not complicated and the proof of the contract and its terms was clear, satisfactory and convincing. The record amply sustains the holding of the trial court upon this factual controversy and it is unnecessary to cite authorities in support thereof. Therefore, the district court correctly ruled that mother Redding owned a life estate in the realty and consequently partition could not be compelled.

■ The district court also held that the bank's mortgage was not a lien upon the life interest of mother Redding in the real estate. This ruling is assigned as error. The contention of appellants is that mother Redding mortgaged her life estate in all the property by joining in a mortgage to the undivided 5/9 of said real estate. Appellees have not seen fit to argue this phase of the matter or to submit authorities thereon. Upon this proposition appellants cite section 10042, Code of Iowa 1935, and John Hancock Mut. Life Ins. Co. v. Dower, 222 Iowa 1377, 271 N. W. 193, in which this court said, loc. cit. 1384, 271 N. W., loc. cit. 197:

"By executing this mortgage the defendants warranted that they were seized of the legal title of the premises in fee simple and are estopped from asserting that the mortgage did not convey the rights which it purports to convey."

Under ordinary circumstances the mortgage to appellant executed by mother Redding as one of the makers would, therefore, cover the life estate of mother Redding in the property included in the mortgage, to wit: an undivided 5/9 interest in

the property listed in the mortgage by specific description. However, in the case at bar appellant has by its actions, placed itself in such position that it is not equitably entitled to have its mortgage established against the life estate of mother Redding in said 5/9 interest. In this connection it may be said that appellant knew that mother Redding had been in actual or constructive possession of all the real estate since the death of father Redding.

It is evident that Mr. Bean, as a managing officer in appellant bank and in its predecessor bank, knew when he procured the mortgages in 1924, 1927 and 1931, that there had been an arrangement by which son Arthur became the owner of an undivided 1/3 of the property and mother Redding the owner of a life estate in all the property. Mr. Bean testified that in 1933, there was a discussion of this matter in which son Arthur said there never had been any agreement and mother Redding said she had her interest in the property. However, after this conversation, Mr. Bean secured another mortgage for the bank in 1934. This mortgage recited that it covered all the interest of son Arthur and mother Redding in all the real estate. The form of the 1934 mortgage does not indicate that the bank then believed or contended that mother Redding owned a 1/3 interest in the property, but is entirely consistent with the view that the bank knew of her life estate. The first indication that the bank was trying to change its position and secure a hold upon additional property was in the 1937 mortgage now in question. In this mortgage appellant elected to forego its lien upon the life estate of mother Redding in all the property and in lieu thereof attempted to fasten its lien upon her interest, as an undivided 1/3. Appellant made this change with knowledge of the situation. It thereby took the possibility of gain with the chance of loss, if its new position should prove to be incorrect.

In the petition filed by son Arthur, it was alleged that mother Redding owned an undivided 1/3 interest in the real estate and son Arthur a 2/9 interest. Appellant by its verified answer, filed October 15, 1937, admitted the allegations of said petition, and under ordinary circumstances would be estopped to deny that mother Redding had any interest in said real estate beyond a 1/3 interest therein.

Therefore, in view of the estoppel against mother Redding resulting from the declarations of the mortgage and the estoppel

of appellant by its pleading and the position taken by it during the trial as to the extent of the lien of its mortgage, the decision as to what portion of mother Redding's life estate was subject thereto must be based upon the facts otherwise appearing in the record. Florida Land Inv. Co. v. Williams, 98 Fla. 1258, 116 So. 642.

As above noted the only interest of mother Redding in the real estate was shown to be a life estate. Consequently, the mortgage of the bank would attach to only an undivided 1/3 interest in her said life estate.

The decree of the district court recites that appellant's mortgage is not a lien against the life estate of mother Redding. It should have recited that the mortgage was not a lien against 2/3 of the life estate owned by mother Redding, therefore it should be and is modified accordingly. In all other respects the judgment and decree of the district court is affirmed.—Modified and affirmed.

MITCHELL, C. J., and RICHARDS, HAMILTON, SAGER, STIGER, MILLER, and HALE, JJ., concur.